J-S07027-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH PATTERSON | : | |
| | : | |
| Appellant | : | No. 581 EDA 2022 |

Appeal from the PCRA Order Entered March 15, 2019,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0006519-2012.

BEFORE:  DUBOW, J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MAY 11, 2023**

Joseph Patterson appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").  42 Pa.C.S.A.  §§ 9541-46.  We affirm.

The PCRA court summarized the pertinent facts as follows:

On May 14, 2012, at approximately 3:45 [p.m.], [the complainant] was walking home when she noticed [Patterson] following her on the 1200 block of Wagner Avenue in Philadelphia. The two had been involved in a personal relationship which had ended shortly before the events in this case.

Patterson attempted to speak with [the complainant] but she did not want to talk.  Patterson abruptly pulled out a knife and shouted "I don't care if I get life in jail.  I'm going to kill you".  He then stabbed [the complainant] in her throat and fled.  [The complainant] collapsed but was able to make it insider her home where she grabbed a towel, applied pressure to the stab wound, and screamed for someone to call 911.

EMS transported her to Albert Einstein Medical Center's Trauma Unit where surgery was performed. Before the operation, Philadelphia police officers spoke to her and she mentioned [Patterson] by name and gave police a description of his appearance and clothing. Approximately three hours later, police observed Patterson standing on the 5000 block of Broad Street in Philadelphia. He matched the description. Police approached [Patterson] and he immediately admitted he was the man police were searching for. Patterson also blurted out that he had discarded the knife at Einstein Hospital earlier that day. Police went to the hospital and found the knife.

PCRA Court Opinion, 7/20/22, at 1-2.

On September 18, 2012, Patterson entered a negotiated guilty plea to attempted murder and possession of an instrument of crime. The court immediately proceeded to sentencing and imposed the negotiated, aggregate sentence of twelve to twenty-four years of incarceration.

The PCRA Court summarized the subsequent procedural history as follows:

[Patterson] did not move to withdraw his guilty plea, nor did he file a direct appeal to the Superior Court. On August 22, 2013, he filed a pro se PCRA petition claiming that his guilty plea was unlawfully induced and that counsel was ineffective. On December 31, 2013, [the PCRA court appointed counsel]. On June 20, 2016, [Patterson] filed an addendum to his pro se PCRA petition in support of his ineffective counsel claim, explaining more clearly his position that mental health illness caused his guilty plea to be a product of duress. This pro se addendum caught our attention.

On July 7, 2016, Patterson filed pro se a motion for new counsel. On October 20, 2016, [PCRA counsel] filed a *Finley* letter which this court rejected on January 19, 2017 after a hearing. [PCRA counsel] had not pursued the mental health issue raised by Patterson. This court removed [PCRA counsel] and appointed [current counsel].

On October 18, 2017, [current counsel] filed an amended petition and memorandum of law and raised four claims: (1) the guilty plea was unlawfully induced; trial counsel was ineffective for (2) causing [Patterson] to enter an involuntary or unknowing guilty plea, (3) unjustified failure to file a motion for reconsideration of sentence, and (4) failure to properly represent [Patterson] at sentencing. On June 7, 2018, this court issued a Rule 907 notice [of] intent to dismiss the PCRA but on October 4, 2018, having read correspondence from Patterson, we decided to schedule an evidentiary hearing on the mental health issue.

This took place on January 31, 2019[.] Patterson was present in person. Patterson's testimony was followed by his trial attorney[.].

Following the hearing, on March 15, 2019, the court dismissed Patterson's PCRA amended petition on a finding that Patterson's negotiated guilty plea was neither coerced nor otherwise involuntary, nor the product of ineffective assistance of counsel.

For reasons related to an unfounded fear that Patterson had not received timely notice of his right to appeal, we vacated our March 15, 2019 order and entered a new dismissal order dated June 27, 2019.

[Patterson] filed a timely notice of appeal on July 12, 2019. On October 22, 2020, the Superior Court remanded with instructions to file a supplemental Pa.R.A.P. 1925(a) opinion to explain why the dismiss had been vacated by our March 15, 2019 order. Having not heard directly from this PCRA court within thirty (30) days, the Superior Court quashed [Patterson's] appeal as untimely but ordered this PCRA court to permit a *nunc pro tunc* appeal.

PCRA Court Opinion, 7/20/21, at 2-3 (excess capitalization, footnote and citation omitted). This appeal followed. Both Patterson and the PCRA court have complied with Pa.R.A.P. 1925.

Patterson raises the following two issues on appeal:

I.      Whether the PCRA court erred in not finding the guilty plea of [Patterson] was not unlawfully induced.

- 3 -

II. Whether the PCRA court erred in not finding trial counsel was ineffective for causing [Patterson] to enter an involuntary or unknowing guilty plea.

Patterson's Brief at 8.

This Court's standard of review for an order dismissing a PCRA petition is to ascertain whether the order "is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Barndt**, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

To be eligible for post-conviction relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated errors or defects in 42 Pa.C.S.A. section 9543(a)(2), and that the issues he raises have not been previously litigated or waived. **Commonwealth v. Carpenter**, 725 A.2d 154, 160 (Pa. 1999). An issue has been "previously litigated" if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue, or if the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. **Carpenter**, 725 A.2d at 160; 42 Pa.C.S.A. § 9544(a)(2), (3). If a claim has not been previously litigated, the petitioner must then prove that the issue was not waived. **Carpenter**, 725 A.2d at 160. An issue will be deemed waived under the PCRA "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state post-conviction proceeding." 42 Pa.C.S.A. § 9544(b).

In his first issue, Patterson asserts that the trial court erred in accepting his guilty plea due to a deficient colloquy. *See* Patterson's Brief at 12-14. As the PCRA court noted, Patterson did not seek to withdraw his plea before the trial court, or raise such a claim on direct appeal. Thus, Patterson's first issue is waived. *Carpenter*, *supra*.

In his second issue, Patterson asserts the ineffectiveness of plea counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A failure to satisfy any prong of the test for ineffectiveness requires rejection of the claim. *Commonwealth v. Martin*, 5 A.3d 177, 183 (Pa. 2010).

Patterson asserts that plea counsel's "ineffectiveness and coercive actions played a large role in the unlawful inducement of [his] guilty plea." Patterson's Brief at 16. According to Patterson, plea counsel "never ensured that [he] was given a proper colloquy prior to entering his plea and [never] had him examined for mental stability." *Id.* Regarding claims of ineffectiveness in relation to the entry of plea, we note:

> Ineffective assistance of counsel claims arising from the plea bargaining-process are eligible for PCRA review. Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter into an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.
>
> The standard for post-sentence withdrawal of guilty pleas dovetails with the arguable merit/prejudice requirements for relief based on a claim of ineffective assistance of plea counsel, . . . under which the defendant must show that counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating the entry of an unknowing, involuntary, or unintelligent plea. This standard is equivalent to the "manifest injustice" standard applicable to all post-sentence motions to withdraw a guilty plea.

*Commonwealth v. Kelley*, 136 A.3d 1007, 1012-13 (Pa. Super. 2016) (citations omitted).

Moreover, "[o]ur law presumes that a defendant who enters a guilty plea was aware of what he was doing," and "[h]e bears the burden of proving otherwise." *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa. Super. 2003) (citations omitted).

- 6 -

> The longstanding rule of Pennsylvania law is that a defendant may not challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies. A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy.

*Id.* On appeal, this Court evaluates the adequacy of the plea colloquy and the voluntariness of the resulting plea by looking at the totality of the circumstances. *Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011).

Here, the PCRA court found no merit to Patterson's claim. The court first summarized the testimony presented at the evidentiary hearing and assessed its credibility:

> At the PCRA evidentiary hearing, [Patterson's] testamentary claim was that he had not understood the guilty plea because he had been "too much out [of my] reality." We find [Patterson's] incompetence claim is not credible based on the transcript of the guilty plea colloquy, [Patterson's] other statements at the PCRA evidentiary hearing and [plea counsel's] testimony.

> [Patterson] testified that he had understood the plea deal was for "12 to 24" years, but he wanted [plea counsel] to do better. This court notes the plea agreement was indeed for 12 to 24 years and accordingly we find that Patterson understood the deal when it was offered and knew its ramifications. Guilty plea transcripts are clear that [Patterson] went through with a guilty plea to attempted murder in exchange for a promised 12 to 24 year sentence, and did so knowingly, intelligently, and voluntarily.

> [Plea counsel] testified credibly that he tried to procure a shorter deal for [Patterson] but could not. [He] also testified credibly that when he returned to [Patterson], having been unable to negotiate shorter prison time, he explained to [Patterson] that his risk of an aggravated [] guideline sentence for attempted murder was real based on the evidence accumulated against him. [Plea counsel] also told [Patterson] that the chances of a

conviction for attempted murder were very high whether the factfinder was a jury or a judge because the crime involved a neck stabbing. Without a cap on a potential sentence of attempted murder, [plea counsel] advised [Patterson] that the nature of the crime could prompt a court to impose a sentence in the aggravated range of the sentencing guidelines which would be greater than the 12 to 24 years offered in the plea bargain.

PCRA Court Opinion, 3/23/22, Exhibit A, at 2-3 (formatting altered).[1]

As to Patterson's mental health issues, the PCRA court summarized the

pertinent testimony as follows:

On consideration of the testimony at the hearing, this PCRA court finds counsel was prepared throughout his handling of [Patterson's] defense. Specifically, [plea counsel] knew that Patterson had a history of serious mental illness. He testified there were notations in his trial file from his office's Mental Health Unit about [Patterson's] illness. He testified his office mental health professionals had concluded that [Patterson] was competent to stand trial. Based on his own meetings with [Patterson] in preparation for trial, [plea counsel] testified that he agreed with the Mental Health Unit that [Patterson] was competent.

[Plea counsel] also testified that he believed a jury would not have found [Patterson] either insane, or guilty but mentally ill. [Plea counsel] stated his belief is based on his review of discovery provided by the prosecutors. During the PCRA evidentiary hearing, we ordered [plea counsel] to produce this discovery for PCRA court review. We find the discovery information corroborates [plea counsel's] strategic assessment of [Patterson's] options and we find [plea counsel] had a reasonable

_____

[1] At the PCRA hearing, plea counsel agreed with the prosecutor's statement that, given his prior record score, Patterson's standard guideline sentence "of 186 months to the statutory limit [or] "15 and a half to 31 years." N.T., 1/31/19, at 35. He further agreed that the plea bargain Patterson accepted was a mitigated sentence. *Id.* Patterson later acknowledged that he could have faced a maximum 40-year prison term if convicted of attempted murder. *Id.* at 45

basis to advise [Patterson] to give up his right to trial and accept the best available plea offer.

*Id.* at 3-4.

Based on the above comments, the PCRA court concluded that Patterson failed to meet his burden of establishing the three-prong ineffectiveness test. *Johnson*, *supra*. As to the "arguable merit" prong, the court explained:

> Based on the facts of this case, the first prong is not met, since [Patterson] was not incompetent when he entered his guilty plea. The transcript records from the guilty plea colloquy and the PCRA evidentiary hearing are clear that [Patterson] understood what he was doing when he entered his guilty plea and why. He accepted the best deal available and did so knowingly, intelligently, and voluntarily to avoid a risk of a longer sentence. The plea bargain that he accepted was below the standard range of the sentencing guidelines for an aggravated assault [considering Patterson's] previous aggravated assault delinquency.

PCRA Court Opinion, 3/23/22, Exhibit A, at 6 (formatting altered).

Our review of the record supports the PCRA court's conclusions. As a matter of credibility, the PCRA court believed trial counsel's version of the contested facts. We cannot disturb this determination. *See Commonwealth v. Harmon*, 738 A.2d 1023, 1025 (Pa. Super. 1999) (explaining that when a PCRA court's determination of credibility is supported by the record, it cannot be disturbed on appeal).

Patterson's claims to the contrary are unavailing; Patterson's claim that his plea was unlawfully induced is belied by the record. Moreover, Patterson's assertion that plea counsel should have considered a "plea of guilty but

mentally insane" fails because the PCRA court credited plea counsel's testimony that such a plea would not have been successful.[2]  Finally, our review supports the court's statement that Patterson's PCRA petition "is motivated by a desire to win a shorter sentence but without legal cause." PCRA Court Opinion, 3/23/22, Exhibit A, at 5.  This conclusion is supported by Patterson's own testimony at the PCRA hearing: "I don't mind taking the deal, it is just the deal that is coming is too much time." *Id.* (citing N.T., 1/31/19, at [23]).

In sum, given the PCRA court's credibility determinations, the PCRA court correctly determined that Patterson's ineffectiveness claim lacked merit. We therefore affirm the order denying him post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2023

---

[2] Patterson claims he has "a myriad of records, throughout the course of his life, detailing his struggles with mental illness and personal tragedies which have affected his mental stability."  Patterson's Brief at 18.  Patterson did not present any of these records at the PCRA hearing.